# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION

| | |
|---|---|
| National Federation of the Blind, Inc. and Jamal Mazrui,<br><br>                                  Plaintiffs,<br>v.<br><br>United States Office of Personnel Management, Kathleen McGettigan in her official capacity as Acting Director of the United States Office of Personnel Management, and Blue Cross and Blue Shield Association,<br><br>                                  Defendants. | Case No. 1:19-cv-06249<br><br>Hon. Sharon Johnson Coleman |

## CONSENT DECREE

**I.  INTRODUCTION**

WHEREAS, Plaintiffs National Federation of the Blind, Inc. ("NFB") and Jamal Mazrui (collectively, "Plaintiffs") and Defendants U.S. Office of Personnel Management and its Acting Director Kathleen McGetigan, in her official capacity (collectively, "OPM," and collectively with Plaintiffs, the "Parties") now mutually desire to resolve all of the claims asserted by Plaintiffs against OPM in *National Federation of the Blind, Inc., et al. v. U.S. Office of Personnel Management, et al.*, Civ. No. 1:19-cv-6249 (N.D. Ill.) ("Case") without the need for further litigation and without any admission of liability; and

WHEREAS, since the initiation of this Case, OPM has taken the following actions as a result of good-faith negotiations with Plaintiffs:

    A.    On or about October 31, 2020, OPM made upgrades to the OPM.gov content management system in order to modernize the system and promote a more accessible

1

administrative interface for OPM content owners and managers of the Healthcare section of OPM.gov.

B. On or about October 31, 2020, OPM implemented an agency wide roll-out, including announcements and reference materials, regarding its updated PowerPoint templates to be used by all program offices. These updated PowerPoint templates are designed to facilitate the creation of portable document formats ("PDFs") that conform to Web Content Accessibility Guidelines ("WCAG") 2.0 AA so that Federal Employees Health Benefits ("FEHB") Program eligible blind persons (hereafter referred to collectively as "blind persons") will have substantially equivalent access to and use of the information contained therein. The roll-out also includes notification to program offices of the date by which only the updated PowerPoint templates may be used as source files for PDFs, and that packages containing obsolete PowerPoint templates will be rejected. Only these accessible PDFs will be authorized for circulation, including posting to OPM.gov.

C. On or about October 15, 2020, OPM updated its current method for users of OPM.gov to contact the agency with any accessibility concerns or questions about the OPM.gov website. The webpage, OPM.gov/accessibility, now includes a web form for complaints or inquiries, which is directed to the agency Section 508 Program Manager and OPM web team.

D. On or about November 16, 2020, OPM updated the FEHB plan comparison tool ("PCT"), available at https://www.OPM.gov/healthcare-insurance/healthcare/plan-information/compare-plans/, to make the FEHB PCT conformant to, at a minimum, WCAG 2.0 AA, so that blind persons will have substantially equivalent access and use as other FEHB eligible persons.

E. OPM has started updating the 2021 FEHB Plan brochures appearing on the Healthcare section of OPM.gov to be conformant to, at a minimum, WCAG 2.0 AA, so that blind persons will have substantially equivalent access and use as other FEHB eligible persons. OPM has prioritized this update process by starting with the brochures for the three FEHB plans (these three plans are offered by two separate FEHB carriers) that had the highest enrollment in the 2020 Plan year, and completed updating those three brochures on or about November 16, 2020. OPM completed updates to three additional FEHB Plan brochures with the next highest enrollment in 2020 on or about November 30, 2020.

F. OPM has started updating the 2021 Plan brochures for the Federal Employees Dental and Vision Insurance Program ("FEDVIP") appearing on the Healthcare section of OPM.gov to be conformant to, at a minimum, WCAG 2.0 AA, so that blind persons will have substantially equivalent access and use as other FEDVIP eligible persons. OPM has prioritized this update process by starting with the FEDVIP plans with the highest enrollment in the 2020 Plan year. OPM completed updating the brochures for four FEDVIP dental plans and one FEDVIP vision plan on or about November 30, 2020.

E. OPM's Trusted Testers have reviewed and tested updates to webpages (excluding PDFs), as well as the addition of new webpages, made on the Healthcare section of OPM.gov through December 31, 2020, for conformance with WCAG 2.0 AA.

NOW THEREFORE, Plaintiffs and OPM hereby consent to the entry of this decree with the following terms.

## II. OPM'S CONSIDERATION

In consideration for the promises of Plaintiffs set forth in Section III of this Consent Decree, *infra*, OPM agrees as follows. The provisions set forth in this Section II shall constitute the sole and exclusive consideration to be provided to Plaintiffs by OPM.

A. <u>Certain actions relating to the Healthcare section of OPM.gov</u>. OPM shall continue its work to provide FEHB Program eligible blind persons with substantially equivalent access to and use of the Healthcare section of OPM.gov (available at https://www.OPM.gov/healthcare-insurance/healthcare/) that OPM affords to other FEHB-eligible persons. In addition to the actions it has already taken in this regard (as detailed in Section I of this Consent Decree, *supra*), OPM shall take the following actions:

1. No later than September 30, 2021, OPM shall ensure that all OPM.gov FEHB Electronic Content[1] that was posted on or after January 1, 2018 conforms with WCAG 2.0 AA, and make updates as necessary to conform to any future WCAG accessibility requirements, except that this provision shall not apply to OPM.gov FEHB Electronic Content marked as

---

[1] "OPM.gov FEHB Electronic Content," as used in this Consent Decree, consists of the webpages and documents appearing on the Healthcare section of OPM.gov, except such webpages or documents that meet the definition of Legacy ICT (see Section 508 regulations, Sections E202.1 and E202.2), and FEHB Plan brochures posted prior to November 1, 2020. "FEHB electronic content" does not include electronic content hosted on a third-party site, even where OPM.gov contains a link to such third-party site.

"archives,"[2] marked as "no longer updated,"[3] or appearing in the "Carriers"[4] tab of the Healthcare section of OPM.gov.

    2. As of the Effective Date of this Consent Decree, OPM will commence making any OPM.gov FEHB electronic content that is new or that has been subject to an alteration (as that word is defined in Section E103.4 of the Section 508 regulations) conformant to, at a minimum, WCAG 2.0 AA, and make updates as necessary to conform to any future WCAG accessibility requirements, so that blind persons will have substantially equivalent access to and use of such new or altered OPM.gov FEHB Electronic Content.

    3. As described above in Section I.E of this Consent Decree, OPM has started updating the 2021 FEHB Plan brochures appearing on the Healthcare section of OPM.gov to be conformant to, at a minimum, WCAG 2.0 AA, so that blind persons will have substantially equivalent access and use as other FEHB eligible persons. OPM has prioritized this update process by starting with the brochures for the three FEHB plans (these three plans offered by two separate FEHB carriers) that had the highest enrollment in the 2020 Plan year, and completed updating those three brochures on or about November 16, 2020. OPM completed updates to three additional FEHB Plan brochures with the next highest enrollment in 2020 on or about

---

[2] Although the URL and content located therein is subject to change, as of the Effective Date this Consent Decree, FEHB Electronic Content marked as "archives" could be found at https://www.OPM.gov/healthcare-insurance/healthcare/plan-information/previous-years/#url=Earlier-Plan-Information.

[3] Although the URL and content located therein is subject to change, as of the Effective Date of this Consent Decree, FEHB Electronic Content marked as "no longer updated" could be found at https://www.OPM.gov/healthcare-insurance/healthcare/plan-information/previous-years/#url=2019.

[4] Although the URL and content located therein is subject to change, as of the Effective Date of this Consent Decree, FEHB Electronic Content appearing in the "Carriers" tab of the Healthcare section of OPM.gov could be found at https://www.OPM.gov/healthcare-insurance/healthcare/carriers/.

November 30, 2020.  The remaining FEHB Plan brochures, prioritized in descending order of 2020 enrollment size, will be made conformant to, at a minimum, WCAG 2.0 AA, by no later than June 30, 2021.  In the interim, blind persons who may need assistance obtaining information contained in FEHB Plan brochures that do not conform to WCAG 2.0 AA can seek such assistance from the usual points of healthcare assistance, including the FEHB carriers, federal agencies' human resources offices, and for annuitants, their servicing agency. For most annuitants, the servicing agency is OPM Retirement Services.

4. As described above in Section I.F of this Consent Decree, OPM has started updating the 2021 Plan brochures for the Federal Employees Dental and Vision Insurance Program ("FEDVIP") appearing on the Healthcare section of OPM.gov to be conformant to, at a minimum, WCAG 2.0 AA, so that blind persons will have substantially equivalent access and use as other FEDVIP eligible persons.  OPM has prioritized this update process by starting with the FEDVIP plans with the highest enrollment in the 2020 Plan year.  OPM completed updating the brochures for four FEDVIP dental plans and one FEDVIP vision plan on or about November 30, 2020.  The remaining FEDVIP Plan brochures, prioritized in descending order of 2020 enrollment size, will be made conformant to, at a minimum, WCAG 2.0 AA, by no later than June 30, 2021.  In the interim, blind persons who may need assistance obtaining information contained in FEDVIP Plan brochures that do not conform to WCAG 2.0 AA can seek such assistance from the usual points of dental/vision assistance, including BENEFEDS, customer support for FEDVIP carriers, federal agencies' human resources offices, and for annuitants, their servicing agency. For most annuitants, the servicing agency is OPM Retirement Services.

5. OPM will approve and begin to implement its updated agency-wide policy for compliance with Section 508 of the Rehabilitation Act of 1973, 29 U.S.C. § 794d ("Section

508") ("Section 508 Policy"), consistent with applicable legal requirements, within 60 days of the Effective Date of this Consent Decree. The updated Section 508 Policy will serve as the basis for implementing, among other things, an Advisory Board or agency-wide responsible office, and agency points of contact within each program office to assist in addressing accessibility issues related to document/web materials, IT development, and procurement, subject to any government-wide requirements. OPM also will provide Plaintiffs with a copy of its final, approved Section 508 Policy, consistent with the Freedom of Information Act, 5 U.S.C. § 552, within 14 days of OPM's approval of that policy.

6. As described above in Section I.E. of this Consent Decree, OPM's Trusted Testers have reviewed and tested updates to webpages (excluding PDFs), as well as the addition of any new webpages, made on the Healthcare section of OPM.gov through December 31, 2020, for conformance with WCAG 2.0 AA. Thereafter, and consistent with the obligations described in Sections II.A.1 and II.A.2, above, OPM will follow its usual review and clearance processes to monitor whether OPM.gov FEHB Electronic Content conforms to the WCAG 2.0 AA standard. This process includes review and approval of OPM.gov FEHB Electronic Content that is new or that has been subject to an alteration (as that word is defined in Section E103.4 of the Section 508 regulations) through the OPM internal clearance process, which includes, but is not limited to the Office of Communications, the Office of the General Counsel, the Office of the Director, and the Office of the Chief Information Officer.

7. Within 60 days after the one-year anniversary of the Effective Date of this Consent Decree, OPM shall provide Plaintiffs a written report summarizing the results of its implementation of the terms of Section II.A of this Consent Decree.

B. <u>Certain actions relating to FEHB Carriers' FEHB websites</u>. In Spring 2021, OPM shall issue a carrier letter to FEHB Carriers instructing them to take the necessary steps to make the Carrier FEHB Electronic Content[5] on their websites and mobile applications conformant with commonly accepted best practices for accessibility as reflected in the WCAG 2.0 AA standards and make updates as necessary to conform to any future accessibility requirements, as applicable. FEHB Carriers will be informed that conformance with WCAG 2.0 AA will be considered a prudent business practice in accordance with FEHBAR 1609.7001(b). FEHB Carriers also will be informed that their degree of compliance with this instruction will be one of the factors that OPM contracting officers consider under OPM's annual Plan Performance Assessment in determining each carrier's profit or performance adjustment under its FEHB contract, and may have either a positive or negative impact on their profit or performance adjustment. The carrier letter will remind FEHB Program Carriers that reasonable costs incurred to make applicable items conformant with WCAG 2.0 AA are allowable costs under FEHB Program contracts. The carrier letter will utilize a phased-in approach, instructing carriers to either submit a certification that the Carrier FEHB Electronic Content on their websites and mobile applications is conformant with WCAG 2.0 AA or submit work plans pursuant to which (in the absence of any relevant legal exception(s)), logins, secure messaging, Explanations of

---

[5] "Carrier FEHB Electronic Content," as used in this Consent Decree, consists of the webpages and documents and functionality appearing on a carrier's website that is accessible by FEHB members, whether provided directly by the carrier or a third party, pertaining to FEHB plans, including web pages, plug-ins, and files, as well as any non-FEHB homepages or other paths that a user must navigate to access Carrier FEHB Electronic Content. "Carrier FEHB Electronic Content" does not include any content that would meet the definition of Legacy ICT (see Section 508 regulations, Sections E202.1 and E202.2), and FEHB Plan brochures posted prior to November 1, 2020. "Carrier FEHB Electronic Content" also does not include electronic content hosted on a third-party site, even where the carrier's webpage contains a link to such third-party site.

Benefits, and ID cards would be conformant with WCAG Requirements by January 1, 2023, with a requirement of full conformance of the carrier's Carrier FEHB Electronic Content with WCAG 2.0 AA on their mobile applications and their websites by January 1, 2024. OPM will provide a copy of the carrier letter described herein to Plaintiffs once it is publicly available.

    C.    <u>OPM's payment of fees and costs</u>. Following the entry of this Consent Decree and the dismissal of this Case with prejudice pursuant to Section VII, *infra*, OPM shall pay Plaintiffs the sum of $75,000 in attorneys' fees and costs in full and final settlement of any and all claims for attorneys' fees and costs in connection with Plaintiffs' claims against OPM in this Case.

## III. PLAINTIFFS' CONSIDERATION

In consideration of the promises of OPM set forth in Section II of this Consent Decree, *supra*, Plaintiffs agree as follows:

    A.    <u>Plaintiffs' waiver and release of claims</u>. Upon the Effective Date of this Consent Decree, Plaintiffs hereby waive, release, acquit, and forever discharge OPM (including all of OPM's agencies, components, offices, or establishments, and any officers, employees, agents, or successors, either in their official or individual capacities, of any such department, agency, component, office, or establishment) from, and are hereby forever barred and precluded from prosecuting, any and all claims, demands, causes of action, motions, and requests for any injunctive, declaratory, and/or monetary relief (including but not limited to damages, costs, attorney's fees, expenses, and/or interest) of every kind, nature, or description, whether known or unknown, contingent or liquidated, that have been or could have been asserted in this Case relating to or arising out of any matters or issues alleged in this Case (including in both the Complaint, ECF No. 1, and the First Amended Complaint, ECF No. 58), through and including

the Effective Date of this Consent Decree, including but not limited to the right to appeal any and all claims Plaintiffs asserted in this Case.

B. <u>Plaintiffs' Covenant Not to Sue</u>. Plaintiffs hereby covenant not to commence any action, claim, suit, or administrative proceeding against OPM (including all of OPM's agencies, components, offices, or establishments, and any officers, employees, agents, or successors, either in their official or individual capacities, of any such department, agency, component, office, or establishment) related to the non-performance, failed performance, or otherwise unsatisfactory performance in fulfilling its duties and responsibilities under this Consent Decree; provided, however, that Plaintiffs may seek enforcement of this Consent Decree against OPM pursuant to the continuing jurisdiction of the Court to compel OPM's performance of its obligations under this Consent Decree, but only as expressly articulated in this Consent Decree in Sections V and VI, below.

**IV.  GENERAL PROVISIONS**

A. <u>Authority</u>. Plaintiffs and OPM represent that each party has full power and authority to consent to the entry of this Consent Decree, that the entry of this Consent Decree will not violate any other agreement binding the party, and that this Consent Decree, upon entry by the Court in accordance with Section VII, *infra*, is a valid and binding obligation on the party, enforceable in accordance with its terms. The signatories to this Consent Decree expressly warrant that they have been authorized to agree to the entry of this Consent Decree and to bind their respective Parties to its terms and provisions.

B. <u>Knowing and Voluntary Agreement</u>. Plaintiffs and OPM each acknowledge that they are represented by counsel and that they have reviewed, and had the benefit of legal counsel's advice concerning, all of the terms and conditions of this Consent Decree. Plaintiffs

and OPM agree to the entry of this Consent Decree knowingly and voluntarily, of their own free act and deed.

C. <u>Integration</u>. The Terms of this Consent Decree constitute the entire agreement of the Parties entered into in good faith, and no statement, remark, agreement, or understanding, oral or written, which is not contained herein, shall be recognized or enforced; nor does this Consent Decree reflect any agreed-upon purpose other than the desire of the Parties to reach a full and final conclusion of this action and to resolve the matter without the time and expense of further litigation.

D. <u>Duties Consistent with Federal Law</u>. Nothing contained in this Consent Decree shall impose on OPM any duty, obligation, or requirement, the performance of which would be inconsistent with federal statutes or federal regulations in effect at the time of such performance.

E. <u>Severability</u>. Should any non-material provision of this Consent Decree be found by a court to be invalid or unenforceable, then (A) the validity of other provisions of this Consent Decree shall not be affected or impaired; and (B) such provisions shall be enforced to the maximum extent possible.

F. <u>Modification and Amendment</u>. The agreement between the parties reflected in this Consent Decree may be supplemented, amended, or modified only by the mutual agreement of the Parties, and, once the Consent Decree is entered, only with the approval of the Court. No supplement, amendment, or modification of this Agreement shall be binding unless it is in writing and signed by all duly authorized representatives of each Party.

G. <u>Rules of Construction</u>. This Consent Decree shall be considered a jointly drafted agreement and shall not be construed against any party as the drafter. The terms of this agreement shall be given their plain meaning or their meaning under applicable law, including

the FEHB statute, FEDVIP statute, and Section 508 of the Rehabilitation Act and related guidance, whichever is most consistent with the intent of this Consent Decree.

      H.    <u>No Third-Party Rights</u>.  This Consent Decree is not intended to create, and does not create, any third-party beneficiary rights or any other kinds of rights or privileges for any person, group, or entity.

      I.    <u>No Guarantor</u>.  Nothing in this Consent Decree shall make, or should be construed to make, OPM responsible for the performance or compliance of any other entity (including its co-Defendant in this Case, Blue Cross and Blue Shield Association) with any settlement agreement, order, decree, judgment, statute, regulation, or other provision of law or legal obligation.

      J.    <u>No Admission of Liability</u>.  This Consent Decree is not and shall not be construed as an admission by OPM of the truth of any allegation or the validity of any claim asserted against any party in the Case or OPM's liability therein.  Nor is it a concession or an admission of any fault or omission in any act or failure to act, nor shall it be construed for any purpose whatsoever as an admission or presumption of wrongdoing on the part of OPM.  Nor shall any of the terms of this Consent Decree be offered or received in evidence or in any way referred to in any civil, criminal, or administrative action (except in an action to enforce its terms).  Nor shall any terms of this Consent Decree be construed as an admission that the consideration provided by OPM (as described in Section II of this Consent Decree, *supra*) represents relief to which Plaintiffs would be entitled upon a favorable judgment.

**V.    ENFORCEMENT**

The Parties jointly seek only limited retention of jurisdiction of the Court following dismissal of the Case with prejudice with respect to enforcement of this Consent Decree.

Notwithstanding all other provisions outside Section V of this Consent Decree, the Court shall retain jurisdiction only to review claims set forth in this Section V, and only in the manner explicitly provided in this Section. In connection with each such claim, the Court shall retain jurisdiction only to order the relief explicitly specified for each particular claim and only where OPM has not provided that relief pursuant to the procedures specified in this Section. The Court shall lack jurisdiction to imply any claims, or authority to issue any other relief, under this Consent Decree.

  A.  The only claims permissible to enforce this Consent Decree are claims by Plaintiffs alleging that OPM has not complied with its obligations under Section II of this Consent Decree ("noncompliance claim"). Claims seeking to enforce this Consent Decree based on any other alleged conduct are not permissible. The Parties agree to resolve any noncompliance claim according to the procedures set forth in Section V.C, below.

  B.  Should Plaintiffs prevail on any noncompliance claim, the remedy shall be limited to an order requiring OPM to comply with whichever provision of Section II the Court finds there has been a lack of compliance and reasonable attorneys' fees as approved by the Court.

  C.  The exclusive procedure for bringing a noncompliance claim shall be as follows:

    1.  Prior to asserting any noncompliance claim, counsel for Plaintiffs shall submit written notice alleging noncompliance with Section II of this Consent Decree to counsel for OPM ("noncompliance notice"). Such notice shall be submitted by first-class mail and electronic mail, and shall specify precisely the basis for the alleged noncompliance, shall describe with particularity all of the facts and circumstances supporting such claim, and shall identify the provision or provisions of Section II of this Consent Decree with which OPM has

allegedly not complied. The noncompliance notice must be submitted to OPM within 30 days of when Plaintiffs knew of the alleged noncompliance.

2. OPM shall have a period of 30 days to respond to Plaintiffs in writing after the receipt of any noncompliance notice as described in Section V.C.1.

3. Within 14 days of Plaintiffs' receipt of OPM's response described in Section V.C.2, representatives of the Parties shall informally meet, either in person or via teleconference, and confer and attempt to resolve the issues raised in Plaintiffs' noncompliance notice.

4. If the matters raised in Plaintiffs' noncompliance notice are not resolved within 45 days of the meet and confer described in Section V.C.3, Plaintiffs and OPM shall engage in a good faith effort to resolve the matters raised in Plaintiffs' noncompliance notice in nonbinding mediation before a mediator. Each Party shall cover 50% of the total cost of the fees paid to the mediator, and shall bear their own costs.

5. If, after the efforts described in Section V.C.4, the Parties are unable to reach a mutually acceptable resolution of the matters raised in Plaintiffs' noncompliance notice, Plaintiffs may seek relief from the Court as set forth in Section V.A. Under no other circumstances may Plaintiffs seek relief from the Court.

D. Plaintiffs hereby waive and disclaim any right to seek enforcement of this Consent Decree through contempt sanctions, except that if Plaintiffs seek an order compelling compliance with the Consent Decree pursuant to the requirements of this Section V, and the Court issues such order, then any future violation of any such order may give rise to contempt sanctions as in any other case, subject to the Court's finding that contempt sanctions are warranted.

E. Any and all assertions by Plaintiffs of noncompliance shall be forever waived if not asserted pursuant to Section V.C.1 within 30 days of when Plaintiffs knew of the alleged noncompliance. Notwithstanding this limitations period, Plaintiffs' right to seek relief as to any assertion of noncompliance pursuant to this Section V shall terminate when the Court's jurisdiction to enforce this Consent Decree terminates as provided in Section VI.B, *infra*.

F. If OPM is unable to perform any of the obligations set forth in Section II due to extraordinary circumstances beyond OPM's control, OPM will notify Plaintiffs' counsel within 14 days of OPM's determination that it will not be able to perform its obligations. That notification will describe the facts providing OPM's basis for believing that extraordinary circumstances beyond OPM's control prevent OPM from performing its obligations. Within 14 days of that notice, the Parties will meet and confer as to whether the circumstances are beyond OPM's control and to what extent they affect OPM's ability to perform its obligations set forth in Section II. If the Parties cannot agree as to whether extraordinary circumstances exist or an appropriate resolution of those circumstances, Plaintiffs may seek to enforce this Consent Decree by raising a noncompliance claim, and OPM shall be permitted to oppose the filing of such a claim upon the grounds of extraordinary circumstances.

G. The parties stipulate and agree that the Court shall have no jurisdiction over any claims, causes of actions, motions, suits, allegations, or other requests for relief in this Case that are not expressly stated in this Section V.

H. The parties stipulate and agree that the Court shall have no jurisdiction to supervise, monitor, or issue orders in this Case, except to the extent that Plaintiffs invoke the Court's jurisdiction pursuant to the procedures set forth in this Section V.

## VI. EFFECTIVE DATE AND TERMINATION OF JURISDICTION OF THE COURT TO ENFORCE THIS CONSENT DECREE

A.  <u>Effective Date</u>.  This Consent Decree, the entry of which is a condition precedent to any obligation of any Party hereunder, shall take effect on the date the Consent Decree is entered by the Court in accordance with Section VII, *infra*.  The date of such entry shall be the "Effective Date" of this Consent Decree.

B.  <u>Termination of Jurisdiction</u>.  The Court's jurisdiction to enforce this Consent Decree against OPM as described in Section V, above, shall terminate upon the earlier of (1) 30 days after the performance of the specific obligations undertaken by OPM in Section II of this Consent Decree, which shall constitute full and final performance of any and all of OPM's obligations in this Case; or (2) the passage of one year and 90 days after the Effective Date of this Consent Decree.

## VII. DISMISSAL WITH PREJUDICE AND FINAL JUDGMENT

Upon entry of this Consent Decree by the Court, this Case shall immediately be fully and finally dismissed with prejudice as against OPM.  Accordingly, pursuant to Federal Rule of Civil Procedure 41(a)(2), the above-captioned Case, as against Defendant OPM, is hereby dismissed with prejudice.  The Clerk is hereby directed immediately to enter Final Judgment in accordance with this Paragraph.

## VIII. SIGNATURES

By their signatures below, the Parties, by and through counsel, indicate their consent to the terms and conditions set forth below.

Respectfully Submitted,

Dated: May 12, 2021                  By: */s Sharon M. Krevor-Weisbaum*
Eve L. Hill (*Pro Hac Vice*)
EHill@browngold.com
Monica Basche (*Pro Hac Vice*)
MBasche@browngold.com
Sharon M. Krevor-Weisbaum (*Pro Hac Vice*)
skw@browngold.com
BROWN GOLDSTEIN & LEVY, LLP
120 East Baltimore Street Ste. 1700
Baltimore, MD 21202
Telephone: 410-962-1030

Dated: May 12, 2021                  By: */s Rachel M. Weisberg*

Paul W. Mollica
PaulM@equipforequality.org
Barry Charlton Taylor
barryt@equipforequality.org
Rachel M. Weisberg
rachelw@equipforequality.org
EQUIP FOR EQUALITY
20 North Michigan, Suite 300
Chicago, IL 60602
Telephone: 312-341-0022

***Attorneys for Plaintiffs National Federation of the Blind, Inc. and Jamal Mazrui***

Dated: May 10, 2021                  By: *Carlotta P. Wells*
BRIAN M. BOYNTON
Acting Assistant Attorney General

CARLOTTA P. WELLS
Assistant Branch Director

KEVIN P. HANCOCK
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005

(202) 514-3183 (phone)
(202) 616-8470 (fax)
kevin.p.hancock@usdoj.gov

***Attorneys for Defendants United States Office of Personnel Management and Kathleen McGettigan in her Official Capacity as Acting Director of the United States Office of Personnel Management***

SO ORDERED.

Date: _____    _____
HON.  SHARON JOHNSON COLEMAN
UNITED STATES DISTRICT JUDGE